**UNITED STATES of America, Plaintiff,**

v.

**Timothy James McVEIGH and Terry Lynn Nichols, Defendants.**

**Criminal Action No. 96–CR–68–M.**

United States District Court,
D. Colorado.

March 17, 1997.

Patrick Ryan, U.S. Attorney for the W.D. of Oklahoma, Oklahoma City, OK, Joseph Hartzler, Sp. Asst. U.S. Atty. Assigned from S.D. Illinois, Denver, CO, for plaintiff.

Stephen Jones, Richard H. Burr, III, Robert Nigh, Jr., Jones, Wyatt & Roberts, Enid, OK, Jeralyn E. Merritt, Denver, CO, for defendant McVeigh.

Michael Tigar, Ronald G. Woods, N. Reid Neureiter, Denver, CO, for defendant Nichols.

MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS, OR IN THE ALTERNATIVE, REQUEST FOR ABATEMENT OR OTHER RELIEF

MATSCH, Chief Judge.

Alarmed by the presumed effects of recent publication, through communications media, of stories that Timothy McVeigh made incriminating statements, his court-appointed counsel moved to dismiss the indictment with prejudice on the premise that there is now no possibility that Mr. McVeigh can obtain a fair trial. Alternatively, they suggest that the court abate the trial for at least one year or that venue again be changed. Because the court does not accept the assumptions necessary to support the defense position, the requested relief is denied. The trial will proceed as scheduled.

Past experience with jurors and a general awareness of public attitudes about pretrial publicity in criminal cases strongly suggest that these stories have had neither the wide exposure nor general acceptance that the defendant's lawyers presume. Almost two years have passed since the destruction of the Murrah Building in Oklahoma City. Those who have sought to satisfy the public interest in that event and its aftermath have produced prodigious amounts of material

addressing every angle of the story. The investigative efforts of law enforcement agencies have been described, analyzed and criticized. Independent investigations have been undertaken with varying conclusions announced. Court proceedings have been extensively reported, analyzed and discussed. In sum, every possible aspect of this story has been explored in media coverage. More can be expected, with an increasing slant toward the sensational as the communicators compete for public attention before trial.

Publicity affects people differently. This court changed venue from Oklahoma because the entire state had become a unified community, sharing the emotional trauma of those who had been directly victimized. The perceptions of the Colorado residents in the 23 county jury pool will vary greatly according to their individual circumstances and experience.

Crimes are prosecuted publicly. The Constitution commands it. A free and unfettered press is essential to the proper functioning of all democratic institutions, including the people's courts. A jury of twelve persons, randomly selected as representatives of the community at large, is the democratic component of our criminal justice system. Jurors bring their life experiences with them when they come into the courtroom and they are asked to use their developed and collective wisdom and common sense in making the decisions entrusted to them. Voter registration lists are one of the sources used for summoning persons for jury service. But, jurors do not vote for or against the government or the defendant. They sit in judgment of the results of a process that searches for historical truth, limited by procedural controls that protect against the influence of some of the frailties of human nature, including preconceived opinions.

That process begins long before jury selection. A fair trial has its origin in foundational fairness provided by legal rules governing the investigation, arrest and preparation of charges. Foundational fairness requires that the person accused has legal counsel with the skill, competence, experience and courage to provide him with effective representation of his interests at all stages of the proceedings. When counsel are appointed, they must be given adequate resources to support a separate and independent investigation, including technological tools and the expertise of those who have relevant knowledge and experience to assist in preparing to challenge the charges made against the defendant. The Supreme Court has recognized that in circumstances such as those surrounding this case, the function of defense counsel includes representation "in the court of public opinion." *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1043, 111 S.Ct. 2720, 2728, 115 L.Ed.2d 888 (1991).

There can be no doubt about the foundational fairness provided for the defendant in this case. He has lead counsel who has consistently demonstrated his skill and experience as an advocate with a complete and dedicated commitment to his professional responsibility in the representation of Timothy McVeigh. Mr. Jones has the assistance of other capable and responsible lawyers, selected by him for particular assignments. This team of defense lawyers has been assembled to match the team of attorneys assigned by the government to prosecute this case. The court is satisfied that there is adequate representation for both sides.

Fundamental fairness has also been protected in the hearing and disposition of pretrial motions, including ordering separate trials for each defendant and the exclusion and limitation of certain evidence. A courtroom has been modified to accommodate the special needs for this trial. Questionnaires were mailed with the jury summons and qualifying screening of the jury pool has been completed. The court will meet with the jury panel to obtain additional information through means of a more complete questionnaire. Counsel have been invited to participate with the court in conducting individual voir dire of prospective jurors, with special arrangements to protect their privacy.

The jury selected in this case will, as all juries must, decide, after hearing all the evidence and the arguments of the advocates, whether the government has proved these charges against Timothy McVeigh, giving

him the benefit of any reasonable doubt. To reach that decision they will rely only on what they will be permitted to see and hear under the rules of evidence. What the prosecution offers as proof of the crimes charged will be challenged and tested by the defense in the operation of the adversary system. All of the preparation for a full and fair presentation of the evidence in this case has been completed. It is now ready for jury selection and trial.

The two published stories and the publicity surrounding them must be considered in the full context of all that has been said and done in connection with this case. There is no reason to believe that fair-minded persons would be so influenced by anything contained in this recent publicity that they would not be ready, willing and able to perform the duty to follow the law and decide according to the evidence presented in a vigorously contested trial.

A salient virtue of a free people in an open society is a healthy skepticism about what they are told. We have a strong tradition of civic responsibility and the great majority of our citizens consistently display a respect for fair play in all aspects of their lives. The extensive voir dire to be conducted in this case will determine whether the persons summoned from 23 counties in Colorado include at least 18 people who can serve as jurors and alternates in the forthcoming trial. I have full confidence that a fair minded jury can and will be empaneled and that those selected will return a just verdict based on the law and evidence presented to them.

Accordingly, it is

ORDERED that the defendant's Motion to Dismiss, or in the Alternative, Request for Abatement or Other Relief is denied. The trial will proceed with jury selection beginning on March 31, 1997, at 9:00 a.m.